**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CESAR CAMILO GUERRERO**
**PATINO,**

       **Petitioner,**

   v.                          **Case No.:  6:26-cv-00912-AGM-LHP**

**ACTING DIRECTOR-ICE TODD**
**LYONS, SECRETARY MARKWAYNE**
**MULLIN, TODD BLANCHE,**
**GARRETT RIPA,  IMMIGRATION**
**AND CUSTOMS ENFORCEMENT,**
**DEPARTMENT OF HOMELAND**
**SECURITY,**

       **Respondents.**

---

## ORDER

Without alleging that his presence in the United States is lawful, Petitioner Cesar Camilo Guerrero Patino alleges that the United States has unlawfully detained him for immigration purposes.  For the reasons that follow, Mr. Patino's Petition for Writ of Habeas Corpus (Doc. # 1) is due to be dismissed.

## I.  LEGAL STANDARD

There is no question that United States District Courts have the power to issue writs of habeas corpus; Congress granted lower federal courts habeas jurisdiction in 28 U.S.C. § 2241.  In 28 U.S.C. § 2242, Congress required that prior to the exercise of habeas jurisdiction there must be a petition that (1) is "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf"; (2) alleges the "facts concerning the applicant's commitment or detention"; and (3) alleges the "name of the person who has

custody over him and by virtue of what claim or authority, if known." The writ or an order to show cause should be issued "forthwith" unless, on review of the petition, the court finds that the petitioner is not "not entitled thereto." 28 U.S.C. § 2243.

## II.    ANALYSIS

For the reasons that follow, Mr. Patino is not entitled to the issuance of the writ because the petition fails to comply with the statutory requisites of 28 U.S.C. § 2242.

### A.  The Petition is Signed but Not Verified in Accordance with the Ordinary Meaning of "Verification"

Section 2242 requires that the petition be both signed and verified. Mr. Patino's petition complies with the signature requirement because his counsel signed the petition. However, the petition is not verified in accordance with the ordinary meaning of "verification." The "Verification Pursuant to 28 U.S.C. § 2242" is not signed by Mr. Patino. Nor is it signed by anyone identified as being permitted to prosecute an action in his name, pursuant to Rule 17 of the Federal Rules of Civil Procedure. Instead, the "verification" is signed by Mr. Patino's counsel, who states: "I certify and declare under penalty of perjury that the facts alleged in the foregoing Petition for Writ of Habeas Corpus are true and correct *to the best of my knowledge*." (Doc. # 1 at 23) (emphasis added).

Courts have a duty to "give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-39 (1955). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal citation and quotation marks omitted). Like

2

other texts, the text of 28 U.S.C. § 2242 must be considered "in its legal context." *Pulsifer v. United States*, 601 U.S. 124, 141 (2024). When a statute "creates an eligibility checklist," lower courts should avoid reading the statute in a way that would render one textual requirement "meaningless" when it could be read "to serve a concrete function." *Id.* at 143.

Where section 2242 requires that the petition be "signed *and* verified," independent meaning must be given to both requirements. In the context of legal filings, the requirement of a signature is tantamount to a representation of the signatory's good faith belief that the factual allegations are true and correct to the best of the signatory's knowledge. This meaning of "signed" comports with Rule 11 of the Federal Rules of Civil Procedure. Under Rule 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." When a court is presented with a pleading, motion, or other paper that is signed, the signature represents a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" certain things are true. First, "to the best of the person's knowledge" the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Rule 11(b)(1), Fed. R. Civ. P. Second, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b)(2), Fed. R. Civ. P. Third, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11(b)(3), Fed. R. Civ. P. Fourth, "the denials of factual contentions are

warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Under Rule 11(c), the Court may enter sanctions against a signatory if, "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." Rule 11 provides what sanctions may be entered against a signatory who violates Rule 11(b), and those sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11 sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." But, importantly, Rule 11 makes no mention of perjury as a consequence for signing a filing in violation of Rule 11.

In the context of a legal proceeding, verification means something different than signing. While signing a filing under Rule 11 means that the signatory has a good faith belief that the factual allegations are true, a verification states that the facts *are* true, under penalty of perjury. Indeed, the meaning of the word "verify" is to affirmatively and definitively attest to the truth and authority of what is alleged, under penalty of perjury. *Verify*, American Heritage College Dictionary (3d ed. 1993) (defining "verify" as "to append a verification" to a pleading or "conclude with a verification"); *Verify*, Black's Law Dictionary (12th ed. 2024) (defining "verify" as "to prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of."); *Verification*, American Heritage College Dictionary (defining "verification" as "an affidavit that

4

attests to the truth of a pleading"). As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962).

One need only compare the penalties for improperly signing and improperly verifying to appreciate the distinction. As noted above, Rule 11 supplies the penalty when a pleading is signed without a good faith basis. In contrast, when a verified pleading contains a false statement, the penalty is a conviction for perjury. "Perjury is 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Duperval*, 777 F.3d 1324, 1337 (11th Cir. 2015). Considering this definition, if counsel were permitted to throw together a habeas petition that "states a claim for habeas" based on a good faith belief that the allegations were true, then kitchen sink "just-doin'-the-best-I-can-judge" allegations that turn out to be false are not perjury under *Duperval*. And if that were true, then the penalty of perjury is no threat at all and the commonly-understood objective of verification is defeated.

A statute is an expression of a policy judgment by the branch of government responsible for making policy. Presumptively, there is a policy reason behind Congress's inclusion of the verification requirement in the habeas statute. And perhaps that policy judgment is that, without the threat of a perjury conviction, the habeas floodgates would open. Attorneys might file cases on behalf of petitioners with whom they have never spoken; relying

purely on (at worst) a guess or (at best) the word of people who may be in no position to know if the facts alleged are actually true; and without doing the work necessary to form a good faith basis to sign the petition under Rule 11. Yet, realistically, whatever policy judgment drove the enactment of the text of 28 U.S.C. § 2242 is irrelevant. What matters is what the text plainly requires. And, here, the text plainly requires both signature and verification. Giving those words their ordinary meaning in the context of legal proceedings, a verification that is merely on information and belief or to the best of the attorney's knowledge is not a verification at all.

Having concluded that the text of the enactment requires both signature and verification, and that the plain meaning of verification does not permit an attorney to "verify" based on information and belief or "to the best of my knowledge," it is interesting to double-check the analysis. If there was anything more central to the identity of the American legal system than separation of powers, it is the idea that power given to anyone must be held in check; indeed, there is a deep relationship between both ideas. Under the separation of powers, each of the three branches of government exercises distinct powers of the federal government. The legislative branch has the power to make policy, and in the statutory process for habeas proceedings, Congress exercised its policy-making role and gave habeas petitioners a mechanism to be protected against governmental tyranny that is commensurate with the profound historical significance of the writ. By simply filing a piece of paper, the petitioner compels a member of the judicial branch to act "forthwith" on the petition, "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. So long as the judge does not find that the petitioner is not entitled to it, the statute requires issuance of a writ directing a member of the executive branch to also drop everything

6

and respond, "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* The member of the executive branch to whom the writ is directed "shall" then "make a return certifying the true cause of the detention" and, after the return is filed, "a day shall be set for hearing, not more than five days after the return unless for good cause additional time is allowed." *Id.* And then, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.*

It's not exactly antithetical to ordered liberty for Congress to require a habeas petitioner to put some skin in the game before members of two branches of federal government are required to drop everything to address those allegations. If anything, by requiring the petitioner to place himself or herself at risk of a conviction for perjury, Congress established the type of check on the exercise of power that is emblematic of the ordered liberty the United States Constitution protects. Here again, considering the meaning of the text in its context supports the conclusion that a verification cannot be simply on information and belief or to the best of counsel's knowledge. *Pulsifer*, 601 U.S. at 730.

To be clear, the statute does allow verification "by someone acting in [Mr. Patino's] behalf." 28 U.S.C. § 2242. However, the "someone acting in his behalf" language must be read in the context of legal proceedings, too. Rule 17 requires that an action be brought by a real party in interest, which is consistent with the doctrine of standing. The rule dictates under what circumstances one person can act on behalf of another in a representative capacity. And Rule 17 addresses the capacity of a person to sue. Under Rule 17, if the real party in interest is incapacitated in some sense, there is a process that must be followed before another person can take action in their name. And there are good reasons why attorneys are not generally

understood to be the ones who are authorized to do it—just imagine the abundant potential for mischief if Rule 17 was construed to allow attorneys to recruit incapacitated persons as clients, file lawsuits on their behalf without their knowledge, and not only sign the complaints but also verify the truth of the allegations on information and belief.  In any event, the point here is that the petition does not allege counsel's authority to sue on behalf of Mr. Patino pursuant to Rule 17, which is a further basis to conclude that a verification by counsel is not within the statutory meaning of verification of a person "acting in behalf" of the petitioner.

In this instance, the petition is not verified in accordance with the ordinary meaning of "verified" and the petition's failure to comply with the requirements of 28 U.S.C. § 2243 means that the petitioner is not entitled to an order to show cause due.

### B.  The Petition Fails to Allege Necessary Facts Concerning Detention

A habeas petition must allege "the facts concerning the applicant's commitment or detention."  28 U.S.C. § 2242.  The petition does not comply with this requirement, because the petition omits key facts about Mr. Patino's detention.  For example, the petition omits details surrounding Mr. Patino's entry into the United States.  While the petition states that Mr. Patino is a native and citizen of Columbia, it does not make any assertions whether Mr. Patino entered the United States legally or illegally.  If he entered legally, the petition does not make any assertion whether his lawful status was revoked and, if so, on what basis. Additionally, the allegations surrounding Mr. Patino's arrest are insufficiently alleged, including that "[b]ased on information and belief, Petitioner was not arrested pursuant to a valid

warrant."[1]  (Doc. # 1 ¶ 40.)  In one notable contradiction, Mr. Patino alleges that he has been in the United States since 2024 (*Id.* ¶¶ 2, 20) while later stating that he has spent "over 15 years at liberty in the United States." (*Id.* ¶ 59).

These are not trivial errors or omissions.  Clearly, whether Mr. Patino (1) entered the United States lawfully after inspection and authorization of an immigration officer; (2) has been authorized to remain in the United States through the date of his detention; and (3) was arrested pursuant to a warrant are facts relevant to the Court's analysis of the legality of his detention.  *See, e.g.*, 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."); 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").

Meanwhile, key allegations of the petition are a nullity because the petition is not verified within the meaning of the statute and important facts are explicitly not alleged based on personal knowledge.  For example, the petition alleges that "[b]ased on information and belief, Petitioner has no criminal record other than a Simple Battery arrest in Osceola County, Florida." (Doc. # 1 at 2.)  Elsewhere, the petition alleges that "[b]ased on information and belief, Petitioner has no record of a qualifying crime under § 1226(c)." (*Id.* at 7.)  The petition

---

[1] For the reasons previously stated, an allegation made simply on "belief," without more, is insufficient in a proceeding of this character.

also alleges that "[b]ased on information and belief, Petitioner was not arrested pursuant to a warrant." (*Id.* at 9.)  Later, the petition refers to the absence of "a valid warrant." (*Id.* at 12.)

Under the complex statutory framework of American immigration laws, the facts of Mr. Patino's criminal record and whether he was arrested pursuant to a warrant are consequential.  The wiggle room created by the verification-that-isn't and the assertions of fact that are only "on information and belief" or "to the best of my knowledge" simply add an additional reason to conclude that Mr. Patino is not entitled to issuance of the writ.

### C.  The Petition Does Not Name the Person Who Has Custody of the Petitioner

 "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is '*the person* who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (emphasis added); *see also Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973); 28 U.S.C. § 2242 (requiring that a habeas petition allege "the name of *the person* who has custody over him").  This petition names multiple respondents, some of whom are persons and some of whom are agencies of the United States, but the shotgun nature of the petition obscures who Mr. Patino is alleging to be his immediate custodian as a matter of law. Ultimately, if the Court cannot determine who the petitioner alleges to be his immediate custodian, it cannot issue the writ or an order to show cause.  28 U.S.C. § 2243 ("A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto.*") (emphasis added).

10

The petitioner must allege the name of the person who is his immediate custodian because the "writ of habeas corpus does not act upon the prisoner who seeks relief, but *upon the person who holds him* in what is alleged to be unlawful custody." *Braden*, 410 U.S. at 494–95 (emphasis added). Thus, the proper respondent to a habeas petition is "*the person* who has custody over [the petitioner]." 28 U.S.C. § 2242 (emphasis added); *see also* § 2243 ("The writ, or order to show cause shall be directed to *the person* having custody of the person detained.") (emphasis added); *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("[T]hese provisions contemplate a proceeding against *some person* who has the immediate custody of the party detained[.]") (emphasis added).

In *Rumsfeld v. Padilla*, the Supreme Court expressly disapproved of the idea that the immediate custodian rule is "flexible." *Id.* at 427 ("Padilla does not deny the immediate custodian rule's general applicability, but argues that the rule is flexible and should not apply on the unique facts of this case. The Court disagrees."). As a "default rule," the Supreme Court in *Padilla* explained that when a petitioner challenges his "present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435.

Here, what it means to name the custodian must be considered in the statute's context. This is a legal proceeding governed by the Federal Rules of Civil Procedure, which mandate that a pleading contain the following:

> (1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  The allegations must be simple, concise, and direct.  Fed. R. Civ. P. 8(d)(1).  In addition, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Recognizing that the use of the label "shotgun pleading" may be imprecise, the Eleventh Circuit has "identified four rough types or categories of shotgun pleadings."  *Id.* at 1321.  "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id.*  The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action."  *Id.* at 1321–22.  The third type fails to "separat[e] into a different count each cause of action or claim for relief."  *Id.* at 1322–23.  The fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Id.* at 1323.  "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Id.*

12

Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues . . . district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Considering the context that Rule 8 provides, the fact that the petition names various respondents means that the petition does not comply with section 2242. Specifically, the petition lumps the respondents together in a way that makes it impossible for the reader to discern who Mr. Patino claims is his immediate custodian, and more broadly who he alleges did what and when in almost every sense.[2] The petition identifies six respondents: (1) Todd Lyons, Acting Director of ICE; (2) Markwayne Mullin, Secretary of the Department of Homeland Security; (3) Todd Blanche, Acting Attorney General; (4) Garrett Ripa, Field Office Director of the Miami ICE Office; (5) ICE; and (6) the Department of Homeland Security. While certain allegations are unique to each, whatever allegations could be considered unique are either immaterial or subsequently contradicted. For example, he alleges in paragraph 16 that he is detained at the Baker County Detention Center and in paragraph 23 he alleges that

---

[2] The petition also impermissibly incorporates every preceding allegation and claim into the next claim. Mr. Patino's two claims begin with: "Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein." (Doc. # 1 ¶¶ 68, 75.) The net effect is that both claims allege facts that are not directed toward the proper Respondent, nor "pertinent to each claim." *See Barmapov v. Amuial*, 986 F.3d 1321, 1323 (11th Cir. 2021). The Court must parse through the factual body of the petition while "sift[ing] out the irrelevancies" in order to ascertain the basis of each claim and to whom each claim is directed, "a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). The pleading ultimately fails to provide Respondents proper notice of the "grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

he "remains" at the ICE Orlando Field Office. (Doc. # 1 at ¶¶ 16, 23.) The petition also alleges that he is "currently detained *by Respondents* without valid warrants of any kind or sentence to be served." (*Id.* ¶ 7) (emphasis added). He demands that this Court "order Respondents to show cause why the writ should not be granted within three days." (*Id.* ¶ 8.) Throughout the petition, Mr. Patino attributes a swath of unlawful acts broadly to the "Respondents," without specifying which party is responsible for which acts. (*See, e.g., id.* ¶¶ 12, 19, 46, 66, 70, 73.) In his requests for relief, Mr. Patino further fails to distinguish who precisely the Court should order to do what, which, if permitted, might lead to the issuance of an order directing named respondents to act with power they do not have, on the basis of authority the Court may not have either. (*See id.* ¶¶ 78, 80, 81, 82, 83.)

It bears emphasis that the Court's jurisdiction is statutorily bound to the identity of the respondent. 28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions.* The order of a circuit judge shall be entered in the records of *the district court of the district wherein the restraint complained of is had.*") (emphasis added); *Rumsfeld*, 542 U.S. at 435 (explaining that when a petitioner challenges his "present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official"). For that reason alone, a shoot-first-and-ask-questions-later approach to naming respondents in a habeas petition is legally intolerable. Mr. Patino will be granted leave to replead. If he does, then he must cite the legal authority on which he relies for his conclusion that this Court has jurisdiction to issue the writ to a person or entity

14

that is not the "immediate custodian," as that term was construed in *Rumsfeld v. Padilla*, if any person other than the alleged immediate custodian is named as a respondent.

### D. Additional Issues

There are additional reasons why Mr. Patino is not entitled to issuance of the writ. In addition to the requirements of section 2242, a petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94426 (the "Habeas Rules"). While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)." The Habeas Rules are consistent with the statutory requirements imposed by 28 U.S.C. § 2242, including that "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner;" "state the facts supporting each ground;" and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Habeas Rule 2(c)(1), (2), (5). "A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005). Since "Habeas Corpus Rule 2(c) is more demanding" than Rule 8, *id.* at 655, the petition is subject to dismissal, as it does

not adequately "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground."

Finally, the petition is also due to be dismissed because Mr. Patino failed to comply with the Court's Standing Order Requiring Disclosure of Third-Party Litigation Funding. (Doc. # 6.)  The Standing Order requires expedited disclosure from parties seeking emergency relief and provides that the failure to timely comply is a basis on which requested relief may be denied.  (*Id.* at 3.)

## III.    CONCLUSION

This Court is committed to faithful application of binding precedent.  Under binding precedent, serious constitutional questions should not be addressed on deficient pleadings. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("We are unwilling to address and decide serious constitutional issues on the basis of this complaint.").  This petition fails to comply with the statutory requirements for issuance of the writ and it also fails to comply with Rule 8 of the Federal Rules of Civil Procedure and the Habeas Rules.  It is appropriate here to demand repleader, which will afford Mr. Patino an opportunity to cure the deficiencies of his petition.

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]"  And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved."

16

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.      The Emergency Petition for Writ of Habeas Corpus (Doc. # 1) is

**DISMISSED without prejudice**;

2.      Mr. Patino is granted ten days to amend his petition;

3.      The Clerk is directed to immediately **SERVE** a copy of the Petition and this

Order on the named respondents and the Attorney General of the State of

Florida. The Clerk is further directed to serve the Attorney General by first-

class mail; and

4.      Because there is no underlying relief that may be granted, the Emergency

Motion for Temporary Restraining Order and/or Preliminary Injunction

(Doc. # 2) must be and is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on May 26, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies to:**
Petitioner
Respondents
Attorney General of Florida

17